# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| PVP ASTON, LLC, *et al.* )<br><br>Plaintiffs, )<br><br>v. )<br><br>U.S. BANK NATIONAL )<br>ASSOCIATION, *et al.* )<br><br>Defendants. ) | ) C.A. No. N22C-03-103 AML CCLD |

**Submitted: November 9, 2022**
**Decided: January 24, 2023**

## <u>MEMORANDUM OPINION</u>

**Upon Defendants' Motions to Dismiss:**
**GRANTED**

Robert A. Penza, Esq., Christina B. Vavala, Esq., of POLSINELLI PC, Wilmington, Delaware; Llynn K. White, Esq., of POLSINELLI PC, St. Louis, Missouri, *Attorneys for Defendants Sutherland Grantor Trust, Series V, and Sutherland Commercial Mortgage Trust 2018-SBC7.*

John A. Sensing, Esq., Carson R. Bartlett, Esq., of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware, *Attorneys for Defendants U.S. Bank National Association, and Wells Fargo Trust Company, N.A.*

Chad S.C. Stover, Esq., of BARNES & THORNBURG LLP, Wilmington, Delaware, *Attorney for Defendant WF RR3-CMFUN, LLC.*

Michael L. Vild., Esq., Christopher P. Simon, Esq., of CROSS & SIMON, LLC, Wilmington, Delaware, *Attorneys for Plaintiffs PVP Aston, LLC, et al.*

**LeGrow, J.**

The borrowers, who are the plaintiffs in this action, each acquired a real estate property improved with a drugstore. The borrower acquiring each property funded the purchase with a commercial loan issued by one of several lenders in this action. Each loan was secured by an insurance policy provided by a third-party insurer. The policy insured the final balloon installment on each loan in the event the borrower defaulted. All borrowers were unable to make their respective balloon payments and therefore defaulted. Following each default, the insurer paid the outstanding loan balance to the applicable lender under the loan terms. Each lender then assigned the applicable loan to the insurer. After assignment, the insurer and its designees sold the loans and related documents to other parties, some of whom have attempted to foreclose on the properties.

The borrowers, however, contend the lenders were not contractually permitted to assign the loans to the insurer because the insurer did not exercise its contractual option to purchase the loans. Additionally, the borrowers argue the insurer's payment of each outstanding loan balance satisfied the borrowers' remaining loan obligations, and the borrowers therefore own the properties free and clear of their debt obligations. The lenders and insurer disagree.

The borrowers brought the following claims in this action: (1) a claim seeking a declaration that the payments made by the insurer to each lender satisfied the

related loan in full, such that the borrowers have no further obligations; (2) two breach of contract claims against the lenders under the loan documents; and (3) a claim for violation of state mortgage recording statutes.  In the current motions to dismiss, the lenders ask the Court to dismiss all the borrowers' claims against the lenders.  The issue that ultimately is dispositive of the motions is one of contractual interpretation, namely whether the agreements underlying the loan and insurance policy only permitted the lenders to assign the loans if the insurer exercised the contractual "option" to purchase the loans for less than the insured value.  The plaintiffs' proffered interpretation is unreasonable and inconsistent with the contracts' plain language, including language describing the purchase option as being within the insurer's "sole discretion" and "in lieu of" paying the complete insured value.  Since all the plaintiffs' claims are premised on this flawed interpretation, they must be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties and the Underlying Transactions

The following facts are drawn from the Amended Complaint and the record in this matter.  Plaintiffs PVP Aston, LLC, RX Fredericksburg Investors L.L.C., AUBSP Ownerco 15, LLC, and the thirty-three other LLCs named in the Amended

Complaint (collectively, "Plaintiffs" or each, a "Borrower" )[1] obtained commercial loans (each, a "Loan") to finance the sale and leaseback of properties formerly owned by Rite-Aid drugstores (each, a "Property").[2] Defendants U.S. Bank National Association; Sutherland Grantor Trust, Series V; Sutherland Commercial Mortgage Trust 2018-SBC7; Wells Fargo Trust Company, N.A.; WF RR3-CMFUN, LLC; Berkadia Commercial Mortgage, LLC; and KeyBank National Association (collectively, "Defendants")[3] were lenders or agents of lenders (each, a "Lender") for the Loans.[4]

Around 1999, each Plaintiff or its predecessor-in-interest acquired a Property that was improved and operated as a Rite-Aid drugstore.[5] Each acquisition was

---

[1] PVP Aston, LLC is a Delaware LLC that owns a Property in Aston, Pennsylvania occupied by Rite-Aid or an affiliate ("RAD") under a bond type net lease (each, a "Lease"). Amended Complaint ("Am. Compl.") ¶ 6 (D.I. 28). RX Fredericksburg Investors L.L.C. is a Delaware LLC that owns a Property in Fredericksburg, Virginia occupied by RAD under a Lease now expired. *Id.* ¶ 7. AUBSP Ownerco 15, LLC is a Texas LLC that owns a Property in Muskegon, Michigan occupied by RAD as a holdover tenant under an expired Lease. *Id.* ¶ 8.
[2] *See id.* ¶¶ 2, 6-10.
[3] U.S. Bank National Association is a banking association formed under the law of the United States and is a Lender for 30 Loans. *Id.* ¶ 11. Sutherland Grantor Trust, Series V is a Delaware statutory trust and is a Lender for one Loan. *Id.* ¶ 14. Sutherland Commercial Mortgage Trust 2018-SBC7 is a Delaware statutory trust and is a Lender for two Loans. *Id.* ¶ 15. Wells Fargo Trust Company, N.A. is a national banking association formed under the laws of the United States and is a Lender for one Loan. *Id.* ¶ 17. WF RR3-CMFUN, LLC is a Delaware LLC and is a Lender for two Loans. *Id.* ¶ 12. Berkadia Commercial Mortgage, LLC is a Delaware LLC and acted as an authorized agent for WF RR3-CMFUN, LLC for two Loans. *Id.* ¶ 13. KeyBank National Association is a national banking association formed under the laws of the United States and acted as an authorized agent for Sutherland Grantor Trust, Series V and Sutherland Commercial Mortgage Trust 2018-SBC7 for three Loans. *Id.* ¶ 16.
[4] *See id.* ¶¶ 11-17, 20.
[5] *Id.* ¶ 18.

3

financed with a Loan borrowed from a Lender.[6]  Each Loan was evidenced and secured by a note, mortgage, and related instruments that encumbered each respective Property (collectively, the "Loan Documents").[7]  Each Loan was held by a Lender at all relevant times.[8]

## B. The Residual Value Insurance Policies

The Loan Documents required each Borrower to obtain residual value insurance ("RVI") through a policy issued by Financial Structures Limited ("FSL").[9]  The RVI insured the full payment of the final "balloon" installment due on each Loan.[10]  If a Borrower did not timely pay the Loan at maturity, FSL agreed to pay the Loan balance to the applicable Lender.[11]  The insurance was documented by an RVI Policy, defined to include "this [RVI] Policy, the Application and the Declarations, the Additional Named Insured Endorsement and any and all other endorsements hereto or thereto."[12]  Each Plaintiff was identified as a Borrower under both the applicable RVI Policy and the Loan Documents,[13] and each Defendant was a Lender under the RVI Policy that related to the specific Loan held by the Lender.[14]

---

[6] *Id.* ¶ 19.
[7] *Id.*
[8] *Id.* ¶ 20.
[9] *See id.* ¶¶ 3, 21-22.
[10] *Id.* ¶ 21.
[11] *Id.*
[12] *Id.* ¶ 22, Ex. C RVI Policy art. II(27).
[13] *Id.* ¶ 22.
[14] *Id.* ¶ 23.

## C. Loan Maturity and Assignment

All the Loans matured during the COVID-19 pandemic,[15] and none of the Loans was timely retired.[16]  In other words, when each balloon payment came due under each Loan, the Borrower did not pay and defaulted on each respective Loan.[17] After each default, the aggrieved Lender submitted a claim to FSL under the RVI Policy associated with that Loan.[18]  FSL then paid each Lender the Insured Value,[19] and each Lender assigned the Loan Documents to FSL.[20]  FSL and the Lenders entered into agreements (each, an "Extension Agreement") under which FSL paid an amount greater than the Insured Value to each Lender, which Plaintiffs call an "Extension Fee," in exchange for extension of the payment deadline.[21]  After assignment, FSL and its designees sold at least fifteen Loans to third parties.[22]  These third parties sought or are seeking foreclosure on some of the Properties.[23]  At the time the Amended Complaint was filed, foreclosure orders had been entered in at least five cases.[24]

---

[15] *Id.* ¶ 36.
[16] *Id.* ¶ 37.
[17] *See id.*
[18] *See id.* ¶¶ 38, 44.
[19] "Insured Value" is defined in the RVI Policy as: "with respect to the Property, the amount identified on Item 8 of the Declarations, not to exceed all amounts due and payable on the Loan." *See id.*, Ex. C RVI Policy art. II(20).
[20] *See id.* ¶¶ 38-39.
[21] *See id.* ¶¶ 38, 44, 75.
[22] *Id.* ¶ 58.
[23] *Id.*
[24] *Id.* ¶ 59.

## D. Relevant Contractual Language

The Plaintiffs' claims turn on issues of contract interpretation, and close examination of the relevant contractual language therefore is inescapable. Article V, subsection (a) of the RVI Policy, titled "Payment of Insured Value," defines FSL's obligation to pay the Insured Value. That article requires FSL to pay the "Additional Named Insured," that is, the Lender,[25] the Insured Value if: (i) FSL receives a valid claim notice; (ii) the Lender has not received the full payment on the Loan; and (iii) the RVI Policy's terms and conditions are satisfied.[26] That same section confirms that the Borrower has no "ownership or other rights" to the RVI Policy's proceeds.[27] Article V provides that the Policy's coverage terminates upon

---

[25] The Lenders are the "Additional Named Insured" under the RVI Policy. *See id.* ¶ 26; Defendants U.S. Bank National Association, Wells Fargo Trust Company, N.A., and WF RR3-CMFUN's Motion to Dismiss ("U.S. Bank Motion") at 1 (D.I. 34); *see also* Am. Compl., Ex. C RVI Policy art. II(1).

[26] Am. Compl., Ex. C RVI Policy art. V(a). Article V(a) states in relevant part:

> (a) [FSL] will pay to the [Lender] an amount equal to the Insured Value, if: (i) a valid Notice of Claim has been given; (ii) the [Lender] shall not have received payment in full of all amounts owing under the Loan; and (iii) all of the terms and conditions of this [RVI] Policy have been satisfied. [FSL]'s obligations hereunder are limited to making payment to the [Lender] in accordance with the terms hereof and the Additional Named Insured Endorsement, or, at [FSL]'s option, in accordance with [Article] (V)(d) below, and [FSL] shall have no liability to the Insured except to make payment to the [Lender] in accordance with this [RVI] Policy.

*See id.*

[27] *See id.* ("In no event will the Insured have any ownership interest or other rights with respect to the proceeds of this Policy.").

6

payment of the Insured Value or exercise of the Loan Purchase Option contained in subsection (d).[28]

Subsection (d) establishes an alternative to payment of the Insured Value under subsection (a). Specifically, if FSL is obligated to pay the Insured Value, FSL has the option "in its sole discretion, in lieu of complying with Article I and Article V," to purchase the Loan from the Lender for the total amounts payable under the Loan (the "Loan Purchase Option"). Article V(d) describes the Loan Purchase Option as follows:

> (d) In the event that [FSL] is obligated in accordance with the terms and conditions of this [RVI] Policy to make payment to the [Lender], on the Termination Date (and at any time thereafter) [FSL] shall have the option in its sole discretion, in lieu of complying with Article I and Article V of this [RVI] Policy, to purchase the Loan from the [Lender] for a purchase price equal to all amounts payable under the Loan, but in no event greater than the Insured Value. [FSL] may exercise such option by giving written notice to the Insured and the [Lender] within the time period provided in Article V(c) hereof. If [FSL] exercises such option, the [Lender] will assign the Loan and all documents evidencing or securing the Loan to [FSL], without recourse, in accordance with the provisions of Section 8 of the Additional Named Insured Endorsement. Upon completion of such transfer and payment by [FSL] as provided herein, any and all liability of [FSL] under the [RVI] Policy shall terminate. In any event, if the Loan is not outstanding on the Termination Date, any and all liability of [FSL] under the [RVI] Policy shall terminate.[29]

---

[28] *See id.*, Ex. C RVI Policy art. V(b). Article V(b) states: "Upon payment of the Insured Value under paragraph (a) above or paragraph (d) below, all coverage provided by this [RVI] Policy shall be terminated." *See id.*

[29] *Id.*, Ex. C RVI Policy art. V(d).

7

Subsection (c) of Article V sets forth the timing of FSL's payment obligations:

(c) [FSL] shall endeavor to make any payment payable under Article V(a) or V(d) hereof on the same day a valid Notice of Claim is received by [FSL]. In all events if a Notice of Claim is received by [FSL] not less than three (3) Business Days prior to the Termination Date, [FSL] will make payment hereunder on the Termination Date, and if a Notice of Claim is received by [FSL] less than three (3) Business Days prior to the Termination Date payment shall be made within three (3) Business Days after receipt of the Notice of Claim.[30]

Each RVI Policy is subject to an Additional Named Insured Endorsement ("ANIE"). Importantly for the purposes of this case, the Loan Purchase Option expressly references Section 8 of the ANIE, titled "Assignment of Loan Documents in Accordance with Requirements of [RVI] Policy." Section 8 is the assignment provision and establishes the Lenders' obligation to assign the Loan Documents under the RVI Policy:

Upon payment by [FSL] of the Insured Value pursuant hereto, the [Lender] agrees to promptly assign to [FSL] (or its designee), without recourse, the Note, the Mortgage and all other documents relating to the Loan ("Loan Documents", including without limitation the rights of the [Lender] under any mortgage title insurance policies, to the extent assignable) or, in the event the [Lender] (or its Affiliate) has acquired title to the Property prior to the Termination Date, the [Lender], at the option of [FSL] shall also transfer good and marketable title to the Property to [FSL], subject to no mortgages, deeds of trust, liens, easements, covenants, conditions, restrictions, leases or other encumbrances other than the permitted title matters identified on Schedule B attached hereto and made a part hereof or which do not have a material, adverse effect on the value of the Property as of the Termination Date. Notwithstanding the foregoing, the [Lender] shall

---

[30] *Id.*, Ex. C RVI Policy art. V(c).

8

not be required to assign any claim it has to rent payable during the terms of the Lease.[31]

The RVI Policy also included an Insured Covenants Agreement ("ICA"). Section 4 of the ICA, titled "Transfer of Title," further confirms the Lenders are obligated to deliver the Property's Deed to FSL under Article V of the RVI Policy:

> (a) In the event that FSL makes payment for a Claim under Articles I and V of the [RVI] Policy, the Owner shall cause the deed to the Property to be immediately delivered to FSL, without payment of additional consideration by FSL. Owner hereby acknowledges that payment by FSL under the [RVI] Policy is the equivalent of a purchase of the Property by FSL for an amount equal to the amount paid under the [RVI] Policy and used in satisfying all or part of Owner's obligations under the Note, and that such payment constitutes full and fair consideration for the transfer of title to the Property to FSL.
>
> (b) At the time of such transfer of title to the Property, Owner agrees to comply with all of the terms and conditions of, and to execute all documents referred to in, the Contract Provisions Exhibit, attached hereto as Exhibit B.[32]

Finally, the Loan Documents establish certain requirements if the Lender receives a payment after an event of default. In their opposition to the Motions to Dismiss, Plaintiffs clarify that the Loan Documents fall into two subsets: the RA2 Set and the WEC Set.[33] Section 6.05 of the RA2 Set, titled "Payment after Event of Default," states:

---

[31] Am. Compl., Ex. C ANIE § 8 (underlining in original).

[32] *Id.*, Ex. C ICA § 4.

[33] *See* Plaintiffs' Answering Brief ("Answering Br.") at 10 (D.I. 44). The RA2 Set "includes all of the Loans on Exhibit A of the Amended Complaint for which US Bank is the Lender." *Id.* at 10 n.4. The WEC Set "includes all of the Loans on Exhibit A of the Amended Complaint for which US Bank is not the Lender. Specifically, the Loans held" by Sutherland Grantor Trust,

The Lender shall apply (a) all moneys received and amounts realized by it (including any amounts realized by the Lender pursuant to the exercise of remedies pursuant to this Agreement, the Mortgage, the Lease Assignment, Paragraph 19 of the Lease or any other Operative Document) after either (x) a Lease Event of Default shall have occurred and the Lease shall have been declared to be in default or (y) the principal of the Loan then Outstanding shall have been declared to be due and payable immediately pursuant to Section 7.01, and (b) all moneys then held or thereafter received by it under this Agreement or under any other Operative Document as part of the Mortgaged Property, as follows:

(i) to reimburse the Lender for any unpaid expense (including any reasonable legal and other professional fees or expenses) or other costs incurred or paid or advances made by it with its own funds;

(ii) to pay in full the aggregate unpaid principal amount of the Loan then Outstanding, plus any due but unpaid interest thereon to the date of application (including, to the extent permitted by law, interest at the Overdue Rate, if any);

(iii) to pay in full any other Secured Obligations; and

(iv) the balance, if any, of such payments and amounts remaining thereafter shall be distributed to the Company [*i.e.*, the Borrower] or as the Company may direct in writing.[34]

Paragraph 25 of the WEC Set Mortgage and Security Agreement, titled

"Payment After Event of Default," states in pertinent part:

If following the occurrence of any Event of Default under this Indenture, Grantor shall tender payment of an amount sufficient to satisfy the Debt at any time prior to a sale of the Mortgaged Property either through foreclosure or the exercise of other remedies available to

---

Series V; Sutherland Commercial Mortgage Trust 2018-SBC7; Wells Fargo Trust Company, N.A.; and WF RR3-CMFUN, LLC. *Id.* at 10 n.5.

[34] *Id.*, Ex. A RA2 Loan Agreement § 6.05; *see also id.* at 11 (explaining that the "Company" is the Borrower).

Beneficiary under this Indenture, such tender by Grantor shall be deemed to be a voluntary prepayment under the Note and this Indenture in the amounts tendered.[35]

## E. Procedural History

### 1. Related Litigation

There are several related lawsuits pending in Delaware and elsewhere involving some of the parties to this current action. First, six months before this action was filed, certain Plaintiffs in this action filed a lawsuit against FSL in this Court (the "FSL Action").[36] The plaintiffs in the FSL Action filed claims for declaratory relief, breach of contract, violation of insurance laws, and unjust enrichment.[37] The FSL Action is ongoing; the Court presently has under advisement plaintiffs' motion for summary judgment and defendants' motions to dismiss.

Second, on August 9, 2021, one Plaintiff here (AUSBP Ownerco 12, LLC)[38] filed a lawsuit against FSL in Michigan (the "Michigan Action").[39] AUSBP Ownerco 12, LLC filed a complaint with causes of action for declaratory relief and

---

[35] *Id.*, Ex. B WEC Mortgage and Security Agreement ¶ 25.
[36] *See PVP Aston, LLC, et al. v. Fin. Structures Ltd., et al.*, C.A. No.: N21C-09-095 AML [hereinafter "FSL Delaware Action __"].
[37] FSL Delaware Action D.I. 71 ¶¶ 138-51.
[38] AUSBP Ownerco 12, LLC was formerly known as RA2 Troy L.L.C. *See* Am. Compl. ¶ 10.
[39] *See RA2 Troy, L.L.C. v. FI 135 Troy, LLC and ICA Acq. Troy, LLC*, C.A. No: 21-189427-CB; *see also* U.S Bank Motion, Ex. 1 (displaying a copy of the plaintiff's complaint in the Michigan Action). The Court may take judicial notice of court records in the Rule 12(b)(6) context. *See, e.g.*, *Hammer v. Howard*, 2021 WL 4935019, at *4 n.36 (Del. Super. Oct. 22, 2021) (taking judicial notice of filed records in other cases in a Rule 12(b)(6) context).

breach of contract.[40]   The Michigan court granted the defendants' motion for summary judgment, which disposed of that case.[41]

Third, on June 1, 2020, certain Plaintiffs in this action filed a lawsuit against FSL in a Texas federal court (the "Texas Action").[42]   The plaintiffs' complaint included claims for breach of the duty of good faith and fair dealing, violations of the Texas insurance code, violations of the Texas consumer protection act, and unjust enrichment.[43]   On August 25, 2020, the claims made by two Plaintiffs to this litigation, WEC 98D-4 LLC and WEC 98D-5 LLC, were dismissed with prejudice by stipulation.[44]

Fourth, a lawsuit was filed in Idaho with similar posture to the current action (the "Idaho Action").[45]   In the Idaho Action, the plaintiff was an assignee under the ICA.[46]   The plaintiff filed the Idaho Action when the defendants, which are companies similar to Plaintiffs in this lawsuit, failed to transfer title to various properties when the insurer paid the Lender's claim.[47]   The Idaho plaintiff sought

---

[40] *See* U.S. Bank Motion, Ex. 1 ¶¶ 98-103.
[41] *See id.*, Ex. 3.
[42] *See WEC 98D-4 LLC, et al. v. Fin. Structures Ltd.*, U.S. Dist. Ct. N.D. Tex., C.A. No.: 3:20-cv-1399; *see also* U.S. Bank Motion, Ex. 4 (displaying a copy of the plaintiffs' complaint in the Texas Action).
[43] *See* U.S. Bank Motion, Ex. 4 ¶¶ 33-55.
[44] *See id.*, Ex. 5.
[45] *See TJV Assocs. LLC v. RA2 Boise-Overland L.L.C., et al.*, C.A. No.: CV01-21-07907; *see also* U.S. Bank Motion, Ex. 6 (displaying a copy of a memorandum decision and order in the Idaho Action).
[46] *See* U.S. Bank Motion, Ex. 6 at 2.
[47] *See id.*

specific performance under the ICA.[48] On July 12, 2022, the court in the Idaho Action held the ICA was an enforceable agreement under Idaho law and granted the plaintiffs' motion for summary judgment on the specific performance claim.[49]

### 2. This Litigation

On March 11, 2022, Plaintiffs filed the current action in this Court.[50] The original complaint asserted seven claims: declaratory relief under the Loan Documents, declaratory relief under the RVI Policies, breach of the RVI Policies, breach of the Loan Documents, violation of various state mortgage recording statutes, fraudulent concealment, and civil conspiracy.[51] On May 18, 2022, Defendants moved to dismiss the original complaint.[52]

On July 29, 2022, Plaintiffs filed their current Amended Complaint, mooting Defendants' motions.[53] The Amended Complaint asserts four causes of action: (1) a claim seeking a declaratory judgment that "the claim payments that FSL made to each of the Defendants satisfied the Loans in full and that upon payment of the claims, Plaintiffs have no further obligations under the Loan Documents"; (2) a claim for breach of the RVI Policies on the basis that Defendants had an obligation to deliver assignments reflecting a zero balance on each Loan when FSL paid each

---

[48] *See id.*
[49] *See id.*, Ex. 6 at 19, 34-35.
[50] *See* Complaint (D.I. 1).
[51] *See id.* ¶¶ 63-98.
[52] *See* Defendants' Motions to Dismiss (D.I. 17, D.I. 18, D.I. 19, D.I. 20).
[53] *See* Am. Compl.

Lender the Insured Value in exchange for the assignments; (3) a claim for breach of the Loan Documents for the same reasons set forth in Count II; and (4) a claim for violations of state statutes requiring recording of satisfied mortgages and discharge of indebtedness because Defendants allegedly failed to record the pay-off of the Loan balances.[54]  On August 26, 2022, Defendants filed their current Motions to Dismiss the Amended Complaint.[55]

## PARTIES' CONTENTIONS

Defendants Sutherland Grantor Trust, Series V and Sutherland Commercial Mortgage Trust 2018-SBC7 moved to dismiss the Amended Complaint; and Defendants U.S. Bank National Association, Wells Fargo Trust Company, N.A., and WF RR3-CMFUN, LLC filed a second Motion to Dismiss the Amended Complaint (collectively, the "Motions").[56]  The Motions overlap significantly and will be discussed together.

Defendants contend that, following FSL's payments under the RVI Policies, the Lenders had a contractual obligation to assign the Loan Documents to FSL, and

---

[54] *Id.* ¶¶ 85-162.

[55] *See* Defendants' Motions to Dismiss the Amended Complaint (D.I. 32, D.I. 33, D.I. 34, D.I. 35). On September 26, 2022, Plaintiffs dismissed their claims without prejudice against Defendant KeyBank National Association and Defendant Berkadia Commercial Mortgage, LLC.  *See* Partial Stipulation of Dismissal (D.I. 46).  Both were authorized agents for other Lender Defendants.  *See* Am. Compl. ¶¶ 13, 16.  As such, only two Motions to Dismiss the Amended Complaint remain (D.I. 33, D.I. 34).

[56] *See* U.S. Bank Motion; *see also* Defendants Sutherland Grantor Trust, Series V, and Sutherland Commercial Mortgage Trust 2018-SBC7's Motion to Dismiss ("Sutherland Motion") (D.I. 33).

Plaintiffs' Loans were not discharged or satisfied as a result of the payments or assignments.[57] Namely, Defendants contend they did not breach the RVI Policies (Count II), Plaintiffs have no rights under the RVI Policies,[58] and Defendants did not breach the Loan Documents (Count III).[59] Defendants argue Plaintiffs also are not entitled to declaratory relief (Count I) because (i) neither the RVI Policies nor the Loan Documents support their claim; and (ii) Count I is duplicative of Counts II and III.[60] Defendants further maintain they did not violate state mortgage statutes (Count IV) and owed Plaintiffs no obligations under those statutes.[61] Defendants separately assert Plaintiffs' claims against U.S. Bank National Association and Wells Fargo Trust Company, N.A. in their individual capacities should be dismissed because each entity acted solely in their capacities as trustees.[62]

Defendants present additional, alternative arguments as bases to dismiss all the claims (the "Alternative Arguments"). Namely, Defendants contend the doctrines of *res judicata* and collateral estoppel wholly bar Plaintiffs' claims.[63] Defendants also argue Plaintiffs failed to plead damages and therefore lack standing to assert claims against Defendants.[64] Finally, Defendants assert Plaintiffs' claims

---

[57] *See* U.S. Bank Motion at 12-17.
[58] *See id.* at 18-19; Sutherland Motion at 21-24.
[59] *See* U.S. Bank Motion at 18-19; Sutherland Motion at 13-19.
[60] *See* Sutherland Motion at 19-21; U.S. Bank Motion at 19-21
[61] *See* U.S. Bank Motion at 21-22; Sutherland Motion at 24-25.
[62] *See* U.S. Bank Motion at 26-27.
[63] *See id.* at 23-25.
[64] *See id.* at 26; Sutherland Motion at 19.

should be dismissed for impermissible group pleading because Plaintiffs make general allegations about all Defendants rather than alleging specific breaches by each Defendant.[65]

Plaintiffs respond that they have adequately pleaded claims against all parties for Counts II and III because the Amended Complaint alleges the terms of the contracts at issue, Plaintiffs' performance under those contracts, Defendants' breaches of those contracts, and damages.[66] Plaintiffs contend they sufficiently pleaded a claim for declaratory relief (Count I), and the declaration sought is distinct from the breach of contract claims.[67] Plaintiffs further argue none of their claims are barred by *res judicata* or collateral estoppel,[68] and contend the Lender Defendants violated state mortgage statutes by failing to record mortgage satisfactions after the outstanding loan balances were paid.[69]

Several of Defendants' arguments present valid bases for dismissal, but only one requires analysis here. The Motions must be granted because the contractual language is clear that the assignments by Defendants to FSL were valid and in fact required under the RVI Policies. As such, the Alternative Arguments are moot. Additionally, Plaintiffs conceded at oral argument that any purported claims against

---

[65] *See* U.S. Bank Motion at 23; Sutherland Motion at 1, 3, 5 n.3, 21.
[66] *See* Answering Br. at 20-32.
[67] *See id.* at 32-33.
[68] *See id.* at 33-38.
[69] *See id.* at 38-39.

U.S. Bank National Association or Wells Fargo Trust Company, N.A. in their individual capacities were not properly pleaded and should be dismissed.[70]

## ANALYSIS

Under Delaware Superior Court Civil Rule 12(b)(6), dismissal is warranted when the complaint fails to state a claim upon which relief can be granted.[71] When the Court considers a motion to dismiss, the Court must: "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) [not dismiss the claim] unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[72] Under Delaware law, the pleading standard governing a motion to dismiss is "minimal,"[73] but the Court will not accept "conclusory allegations that lack specific supporting factual allegations."[74] "Accordingly, the Court will dismiss a complaint if the plaintiff fails to plead specific allegations supporting each element of a claim or if no reasonable interpretation of the alleged facts reveals a remediable injury."[75]

---

[70] *See* Official Transcript ("Hearing Tr.") at 60:13-19 (D.I. 53).
[71] *See* Del. Super. Ct. Civ. R. 12(b)(6).
[72] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs., LLC*, 27 A.3d 531, 535 (Del. 2011).
[73] *Id.* at 536.
[74] *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998).
[75] *Axogen Corp. v. Integra LifeSciences Corp.*, 2021 WL 5903306, at \*2 (Del. Super. Dec. 13, 2021) (citing *Surf's Up Legacy P'rs, LLC v. Virgin Fest, LLC*, 2021 WL 117036, at \*6 (Del. Super. Jan. 13, 2021)).

17

In the Rule 12(b)(6) context, the Court may consider documents outside the pleadings when "the document[s are] integral to a plaintiff's claim and incorporated into the complaint."[76] Here, the RVI Policies and Loan Documents were not all attached to the Amended Complaint, but all parties agree they are integral to the Amended Complaint and incorporated by reference therein.[77]

## I. Plaintiffs' breach of contract claims (Counts II and III) against the Lenders must be dismissed because the Lenders' assignments of the Loans to FSL were required by the RVI Policies.

To plead a breach of contract claim under Delaware law, the plaintiff must allege: "(1) the existence of a contractual obligation; (2) a breach of that obligation; and (3) damages resulting from the breach."[78] Plaintiffs' theory of this case is that the Lenders' assignment of the Loan Documents to FSL breached the RVI Policies because FSL only was entitled to such assignment if it exercised the Loan Purchase Option in Article V(d) of the RVI Policies.[79] Plaintiffs maintain that because FSL indisputably did not exercise the Loan Purchase Option, the assignments were

---

[76] *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 873 (Del. 2020) (internal quotation marks omitted).

[77] *See* Answering Br. at 10 n.3 ("Although the Loan Documents were not attached to the Amended Complaint, the Defendants have argued, and the Plaintiffs agree, that the Loan Documents are integral to the Amended Complaint and can be considered by the Court."); Sutherland Motion at 4 n.2.

[78] *Buck v. Viking Hldg. Mgmt. Co. LLC*, 2021 WL 673459, at *3 (Del. Super. Feb. 22, 2021) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)). The applicable law in this case depends on where each underlying Property was located. All parties agreed there is no conflict of laws as to the issues raised in the Motions. Hearing Tr. at 60:4-12. Thus, the Court has relied, as needed, on Delaware law for the uncontroverted legal principles at issue.

[79] *See* Answering Br. at 2, 7.

invalid, and the Lenders should have credited FSL's payments to Plaintiffs' underlying obligations under each respective mortgage.[80]

"Delaware adheres to the 'objective theory' of contracts, i.e.[,] a contract's construction should be that which would be understood by an objective, reasonable third party."[81] An unambiguous contract is one that is "subject to only one reasonable interpretation."[82] Delaware courts interpret clear and unambiguous contractual terms according to their ordinary meaning.[83] When the only reasonable interpretation of a contract defeats a plaintiff's claim, dismissal is warranted.[84]

Plaintiffs' interpretation of the RVI Policy language is not reasonable. The plain language of Article V of the RVI Policy and Section 8 of the ANIE permits only one reasonable interpretation: FSL was entitled to assignment of the Loans upon tendering payments under either Article V(a) or V(d). Article V(a) provides FSL "will pay to the [Lender]" the "Insured Value, if: (i) a valid Notice of Claim has been given; (ii) the [Lender] shall not have received payment in full of all amounts owing under the Loan; and (iii) all of the terms and conditions of this [RVI] Policy

---

[80] *See id.* at 7; Am. Compl. ¶¶ 41-43.
[81] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (internal quotations marks and citation omitted).
[82] *See Motley v. Maddox*, 1992 WL 52206, at *6 (Del. Super. Feb. 19, 1992); *see also Sheehan v. AssuredPartners, Inc.*, 2020 WL 2838575, at *9 (Del. Ch. May 29, 2020).
[83] *Osborn*, 991 A.2d at 1159-60 (citing *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992)).
[84] *VLIW Tech., LLC*, 840 A.2d at 615 ("Dismissal, pursuant to Rule 12(b)(6), is proper only if the defendants' interpretation is the *only* reasonable construction as a matter of law." (emphasis in original)).

have been satisfied."[85]  Section 8 of the ANIE provides, in pertinent part, "*[u]pon payment by [FSL] of the Insured Value pursuant hereto*, the [Lender] agrees to promptly assign to [FSL] . . . the . . . Loan Documents."[86]  Section 8 of the ANIE is an express and mandatory provision that requires Defendants to assign the Loans to FSL upon payment of the Insured Value, which Plaintiffs concede occurred with respect to all the Loans.[87]

Article V(d), the Loan Purchase Option, is an alternative to Article V(a). Article V(d) gives FSL the "option in its sole discretion . . . to purchase the Loan from the [Lender] for a purchase price equal to all amounts payable under the Loan, but in no event greater than the Insured Value."[88]  Article V(d) goes on to specify "[i]f [FSL] exercises such [Loan Purchase Option], the [Lender] will assign the [Loan Documents] to [FSL], without recourse, in accordance with the provisions of Section 8 of the [ANIE]."[89]  This subsection allows FSL to acquire the Loans for less than the Insured Value if the amount payable under a given Loan is less than that value.[90]  The fact Article V(d) is an alternative to Article V(a) is made clear by the contractual language in both subsections.  For instance, Article V(d) includes the

---

[85] Am. Compl., Ex. C RVI Policy art. V(a).
[86] *Id.*, Ex. C ANIE § 8 (emphasis added).
[87] *See* Answering Br. at 32 (acknowledging FSL paid Defendants the Insured Value); *see also* Am. Compl. ¶ 39.
[88] Am. Compl., Ex. C RVI Policy art. V(d).
[89] *Id.*
[90] *See id.*

language, "[FSL] shall have the option in its sole discretion," and "in lieu of complying with Article I and Article V of this [RVI] Policy."[91] Article V(a) includes the language, "[FSL]'s obligations hereunder are limited to making payment to the [Lender] in accordance with the terms hereof and the [ANIE], or, *at [FSL]'s option*, in accordance with [Article] V(d)."[92] Even Article V(c), which addresses the timing of payment, refers to payments under Article V(a) or V(d).[93]

This interpretation also is consistent with other provisions in the parties' agreement that state Plaintiffs have no ownership interest in the proceeds of the RVI Policy, and Defendants have an obligation to assign the Loans to FSL upon payment by FSL. ICA Section 4 states, "[i]n the event that FSL makes payment for a Claim under Articles I and V of the [RVI] Policy, the Owner [*i.e.*, Lender Defendants] shall cause the deed to the Property to be immediately delivered to FSL, without payment of additional consideration by FSL."[94] RVI Policy Article V(a) states, "[i]n no event will the Insured [*i.e.*, Plaintiffs] have any ownership interest or other rights with respect to the proceeds of this [RVI] Policy."[95] ANIE Section 8 states, "[u]pon payment by [FSL] of the Insured Value pursuant hereto, the Additional Named

---

[91] *Id.*

[92] *Id.*, Ex. C RVI Policy art. V(a) (emphasis added).

[93] *See id.*, Ex. C RVI Policy art. V(c) ("[FSL] shall endeavor to make any payment payable under Article V(a) or V(d) hereof on the same day a valid Notice of Claim is received by [FSL].").

[94] *See id.*, Ex. C ICA § 4.

[95] *See id.*, Ex. C RVI Policy art. V(a).

Insured [*i.e.*, Lender Defendants] agrees to promptly assign to [FSL] . . . without recourse, the . . . Loan Documents."[96]

Plaintiffs attempt to defeat this plain reading by pointing out there is no mention of ANIE Section 8 in FSL Policy Article V(a), and the title of Section 8 refers to assignment "in accordance with the requirements of [the] policy."[97] Article V(a), however, does not need to expressly reference Section 8 because Article V(a) expressly refers to payment of the Insured Value,[98] and Section 8 expressly applies to such payments.[99] A cross-reference would be redundant, so its absence is not significant. In contrast, Article V(d) refers to occasions when FSL pays less than the Insured Value.[100] Article V(d) therefore cross-references Section 8 to confirm that assignment also shall occur if FSL exercises the Loan Purchase Option under that subsection.

Additionally, Plaintiffs seek to escape the Loan Documents' plain meaning by arguing the Extension Agreements between FSL and Defendants somehow altered Defendants' contractual obligations.[101] Although the argument is less than clear, Plaintiffs seem to take the position that payment of the Insured Value by FSL to Defendants more than three days after notice violated the RVI Policy and the

---

[96] *Id.*, Ex. C ANIE § 8.
[97] *See* Answering Br. at 7.
[98] *See* Am. Compl., Ex. C RVI Policy art. V(a).
[99] *See id.*, Ex. C ANIE § 8.
[100] *See id.*, Ex. C RVI Policy art. V(d).
[101] *See* Answering Br. at 17, 29-30.

22

assignments therefore were not permitted by Section 8.[102]  If this is Plaintiffs' argument, it is unconvincing.  Whether the Extension Agreement and associated Extension Fees were valid is not relevant to whether FSL tendered payment in accordance with Article V(a) of the RVI Policy.  The three-day notice requirement for payment appears in only Article V(c).[103]  The timing obligation under the RVI Policy is owed to Defendants, not Plaintiffs, because Article V(a) states, "[i]n no event will the Insured [*i.e.*, Plaintiffs] have any ownership interest or other rights with respect to the proceeds of this [RVI] Policy."[104]  If Defendants chose to waive the three-day requirement, Plaintiffs have no standing to challenge that waiver.[105]

It simply is not a reasonable reading of the RVI Policies or the Loan Documents to conclude that payment after three days was a payment that satisfied Plaintiffs' Loan obligations rather than payment under Article V(a).  The question of whether the Extension Fees are obligations validly imposed on Plaintiffs is an issue to be resolved between Plaintiffs and FSL.  It is not a claim against Defendants because Defendants no longer own the Loans.

---

[102] *See id.* at 17 ("Defendants knew that the express provisions of each [RVI] Policy required that FSL pay each claim to the applicable Defendant within three business days.  However, FSL entered agreements with each Defendant to 'amend' the [RVI] Policy provisions requiring timely payment in order to allow FSL to pay claims weeks later than they were due.")

[103] *See* Am. Compl., Ex. C RVI Policy art. V(c) ("[I]f a Notice of Claim is received by [FSL] less than three (3) Business Days prior to the Termination Date payment shall be made within three (3) Business Days after receipt of the Notice of Claim.").

[104] *See id.*, Ex. C RVI Policy art. V(a).

[105] *See Fla. Chem. Co., LLC v. Flotek Indus., Inc.*, 262 A.3d 1066, 1084 (Del. Ch. 2021) ("As a general matter, only a party to a contract has standing to enforce it.").

In addition to being inconsistent with the contractual language, Plaintiffs' interpretation is commercially and economically unreasonable. Plaintiffs' reading of the relevant agreements would mean that for payment of each insurance premium, Plaintiffs absolved themselves of responsibility for the balloon payment.[106] In other words, Plaintiffs would have no incentive to make their respective balloon payments, but nevertheless would obtain each Property free and clear of all obligations unless FSL exercised the Loan Purchase Option by paying less than the Insured Value. No commercially reasonable party would agree to that.

Having concluded that Plaintiffs' interpretation is not reasonable, Plaintiffs' breach of contract claims require little further analysis. Because Defendants acted in accordance with the requirements of the RVI Policies, they did not breach the RVI Policies or the Loan Documents. Plaintiffs argue the Loan Documents required any money Defendants received following a payment default to be credited to the unpaid principal on Plaintiffs' Loans.[107] Plaintiffs cite the RA2 Set of Loan Agreements Section 6.05 and the WEC Set of Loan Agreements Paragraph 25 in support of their position.[108] Plaintiffs contend Defendants breached their obligations under these

---

[106] *See* Answering Br. at 1-2.
[107] *See id.* at 16.
[108] *See id.* (citing earlier discussion regarding RA2 Loan Agreement Section 6.05 and WEC Loan Agreement Paragraph 25 in Plaintiffs' Answering Brief); *see also id.*, Ex. A RA2 Loan Agreement § 6.05; *id.*, Ex. B WEC Mortgage and Security Agreement ¶ 25.

policies because the funds Defendants received were not credited to the unpaid principal on Plaintiffs' Loans.[109]

Plaintiffs' argument is premised on their contention that the Lenders only could assign the Loans if FSL exercised the Loan Purchase Option. Since FSL did not exercise the Loan Purchase Option, Plaintiffs conclude Defendants were required to apply the funds received from FSL to the outstanding indebtedness on the Loans.[110] As set forth above, this interpretation of the RVI Policies is flawed, and Defendants were required to assign the Loan Documents upon FSL's compliance with Article V(a). Accordingly, Defendants' obligations under the RA2 Set of Loan Agreements Section 6.05 and the WEC Set of Loan Agreements Paragraph 25 never were triggered.[111]

## II. Plaintiffs' declaratory judgment claim (Count I) is duplicative of its breach of contract claims and must be dismissed for the same reasons.

Plaintiffs' declaratory judgment claim similarly is premised on its flawed interpretation of the RVI Policy and therefore it must be dismissed for the same

---

[109] *See id.* at 16.

[110] *See id.* at 10-12 (arguing RA2 Loan Agreement Section 6.05 and WEC Loan Agreement Paragraph 25 required Defendants to use money received from FSL to pay Plaintiffs' outstanding Loan balances); *see also id.* at 12-16 (arguing FSL did not exercise the Loan Purchase Option).

[111] Defendants separately argued the plain language of Section 6.05 and Paragraph 25 did not apply to payments from FSL under the RVI Policies. *See* U.S. Bank National Association, Wells Fargo Trust Company, N.A., and WF RR3-CMFUN, LLC's Reply Brief at 5-8 (D.I. 48); Sutherland Grantor Trust, Series V, and Sutherland Commercial Mortgage Trust 2018-SBC Reply Brief at 5-7 (D.I. 47). Although there is persuasive force to Defendants' arguments, the Court need not address them here.

reasons set forth above relating to Counts II and III. Even if those claims survived dismissal, however, Count I is not adequately pleaded and must be dismissed.

"A declaratory judgment 'is a statutory action' and so 'is meant to provide relief in situations where a claim is ripe but would not support an action under common-law pleading rules.'"[112] To survive a motion to dismiss, the "declaratory count must be 'distinct' from the affirmative counts in the complaint."[113] In other words, "[w]here a declaratory judgment claim is completely duplicative of the affirmative counts of the complaint, it must be dismissed,"[114] and "[w]here a declaratory judgment does not set forth a distinct cause of action and the other claims fail, the declaratory judgment claim must fail."[115]

In *Blue Cube Spinco LLC v. Dow Chemical Company*, this Court decided a motion to dismiss a breach of contract claim and a declaratory judgment claim.[116] The plaintiff there sought a declaration that the defendant was liable for "any and all [l]osses" incurred from a code violation.[117] This Court determined the breach of

---

[112] *Blue Cube Spinco LLC v. Dow Chem. Co.*, 2021 WL 4453460, at *15 (Del. Super. Sept. 29, 2021) (quoting *Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *29 (Del. Ch. Nov. 26, 2014)).

[113] *Id.* (quoting *Sweetwater Point, LLC v. Kee*, 2020 WL 6561567, at *12 (Del. Super. Nov. 5, 2020)).

[114] *Sweetwater Point, LLC*, 2020 WL 6561567, at *12 (citing *US Ecology, Inc. v. Allstate Power Vac, Inc.*, 2018 WL 3025418, at *10 (Del. Ch. June 18, 2018), *aff'd*, 202 A.3d 510 (Del. 2019) (Table)).

[115] *Id.* (citing *Veloric v. J.G. Wentworth, Inc.*, 2014 WL 4639217, at *20 (Del. Ch. Sept. 18, 2014)).

[116] *See Blue Cube Spinco LLC*, 2021 WL 4453460, at *17.

[117] *See id.* at *16.

contract claim sought "the same thing, except in the language of breach."[118]  The breach of contract claim survived dismissal, but the declaratory judgment claim was dismissed because it was duplicative of the breach claim.[119]

Similarly here, Plaintiffs seek a declaration that "under the terms of the Loan Documents and the [RVI] Policies, the claim payments that FSL made to the Lenders 'satisfied the Loans in full and that upon payment of the claims, the Plaintiffs have no further obligations under the Loan Documents.'"[120]  Plaintiffs argue Count I is distinct from Counts II and III because it "seeks a declaration of how the payments received by each Defendant should be characterized under the Loan Documents," whereas Counts II and III "seek damages that the Plaintiffs have suffered from the Defendants['] breaches of the Loan Documents and [RVI] Policies."[121]  But it is inescapable that the underlying premise upon which Counts I, II, and III are based is the same—FSL's payments to the Lenders satisfied Plaintiffs' Loan obligations despite Defendants' arguments to the contrary.  As pleaded, "Plaintiffs' declaratory judgment claim is not a distinct cause of action; it is a request for relief for" Counts II and III.[122]  In such a circumstance, the declaratory judgment claim must fail.[123]

---

[118] *See id.*
[119] *See id.* at *16-17.
[120] Answering Br. at 32 (quoting Am. Compl. ¶ 87).
[121] *See id.*
[122] *See Veloric*, 2014 WL 4639217, at *20 (dismissing a declaratory judgment claim where it was not distinct from the breach of contract claims).
[123] *See Sweetwater Point, LLC*, 2020 WL 6561567, at *12; *see also Blue Cube Spinco, LLC*, 2021 WL 4453460, at *16-17.

**III.** **Plaintiffs' statutory claim (Count IV) is premised on the same flawed construction of the RVI Policies and therefore also fails to state a claim for relief.**

Count IV cites various state laws requiring a mortgagor to timely record a certificate of loan satisfaction or similar document when the full amount of a mortgage is paid.[124] For the reasons set forth above, the Loans were not paid in full because FSL's payment did not satisfy Plaintiffs' underlying obligations on their respective Loans. Count IV therefore fails to state a cognizable claim.

## CONCLUSION

For the foregoing reasons, the Motions to Dismiss filed by Defendants Sutherland Grantor Trust, Series V; Sutherland Commercial Mortgage Trust 2018-SBC7; U.S. Bank National Association; Wells Fargo Trust Company, N.A.; and WF RR3-CMFUN are **GRANTED**, and the Amended Complaint is **DISMISSED WITH PREJUDICE**. **IT IS SO ORDERED.**

---

[124] *See* Am. Compl. ¶¶ 99-159.